UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION
CIVIL CASE NO. 05-452-DCR

Eastern District of Kentucky
FILED
MAY 3 1 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

WALTER C. HELTON,                          PETITIONER

VS.               **REPORT AND RECOMMENDATION**

JOHN MOTLEY, WARDEN,                    RESPONDENT

*******

This matter is before the Court upon the "Petition for Writ of Habeas Corpus" (DE#1) pursuant to 28 U.S.C. §2254 by the pro se state prisoner Walter C. Helton. Having considered the entire record, including the Petition (DE#1), Answer and Appendix of Rule 5 Attachments (DE#6), Motion to Dismiss and/or for Summary Judgment (DE#7), Memorandum in Support (DE#11), and petitioner's Response to the Motion to Dismiss and/or for Summary Judgment (DE#14), the Magistrate Judge makes the following proposed findings of fact and conclusions of law:

## I. Findings of Fact

The following facts are set forth in the state record in this case. See DE#6, Appx. 1-154. On the evening of May 10, 1988, Walter Helton entered the mobile home of Robert "Bobby" Hubbard and intentionally shot Hubbard and Bobby Barnett multiple times with a shotgun. Smith Roark, who also resided at the trailer, managed to escape through a back window. Helton intentionally set fire to the trailer and then went to a party. After fire destroyed the trailer, the dead bodies of Bobby Hubbard, Bobby Barnett, and Cynthia Adkins were found inside. A forensic pathologist examined the bodies and found levels of carbon monoxide saturation indicating that, although the two gunshot victims had died of their wounds, they were still alive when the fire had started. The results showed that Cynthia Adkins had died of smoke inhalation.

The morning after the fire, KSP Detective Gary Parton learned that Smith Roark had been present at the trailer the previous evening. He interviewed Roark about the events. Det. Parton also interviewed various other people, including

Walter Helton, who had a long history of violence and animosity toward Hubbard. Years earlier, Hubbard and Helton had been in a fight during which Hubbard had allegedly stabbed Helton, although Helton did not press charges. During the interview with Det. Parton, Helton initially claimed that he had been at home asleep on the evening of the fire. However, officers soon learned from various other individuals that, on the evening of the fire, Helton had been in a fight with Hubbard and had also been at a nearby party at Rick Broughton's residence. Police learned that Helton had also been observed on the night of the fire (as well as two days earlier) with a sawed off shotgun. At various times, Helton had told people that he was going to "pay Hubbard back" and/or kill him. For example, one witness indicated that at about 11:15 p.m. on the evening of the fire, Helton had said he had just fought with Hubbard and that he was going back to kill him. Several other witnesses also indicated that Helton had indicated he was going to kill Hubbard that night.

    When police interviewed Helton a second time, he changed his story and admitted he had been at the Broughton party on the evening of the fire. Witnesses indicated that Helton had left the party and gone with several people heading to another friend's house. On the way, Helton asked to be let out at Smokey Bridge. When the others returned to the party, Helton had already made it back and told them "I gotten em...Bobby Hubbard and Smiley Roark. The cutting and stabbing days are over." DE#6, Appx. 89. Witness testimony indicated that Helton had told them he had poured fuel oil on the trailer and set it on fire. Helton was thereafter indicted for three counts of murder, one count of attempted murder, and one count of arson for the trailer fire.

    The case proceeded to trial in March of 1999 in the Knox Circuit Court, but resulted in a hung jury. Smith Roark had been subpoenaed for trial, but failed to appear. After a second trial, the jury found Walter Helton guilty of three counts of first-degree murder and one count of first degree arson. The charge of attempted murder was dismissed, apparently due to lack of evidence because Smith Roark refused to testify. Helton was sentenced to three terms of life imprisonment, as well as fifty years imprisonment, all to be served concurrently. DE#6, Appx. 3, Judgment.

    On direct appeal, Helton, through his counsel, argued five main issues: 1) "failure of the court to grant a mistrial, over defense objection, when [Roark] claimed the Fifth Amendment privilege..." (DE#6, Appx. 7, 15-34), 2) contending the trial court should have precluded Robert Stout from testifying, or alternatively, should have granted a continuance to allow the defense additional time to

investigate several letters provided in discovery (DE#6, Appx. 8, 34-48), 3) "a mistrial was required where the jury failed to follow the court's repeated admonition and discussed the case prior to the close of the evidence and the case and submission of the case" (DE#6, Appx. 9, 48-53), 4) "failure of the trial court to instruct the jury on lesser-included offenses violated Helton's constitutional rights" (DE#6, Appx. 9, 53-56) and 5) the trial court should have granted a directed verdict (DE#6, Appx. 9, 56-60).

The Kentucky Supreme Court addressed each issue and affirmed the conviction in a 12-page unpublished opinion rendered on December 20, 2001. *Helton v. Commonwealth*, Case No. 2000-SC-0204-MR; and see, DE#6, Appx. 88-99, for copy of opinion. Helton thereafter sought state post-conviction relief. On August 13, 2002, he filed a pro se motion pursuant to RCr 11.42, which was denied. The Kentucky Court of Appeals affirmed, and the Kentucky Supreme Court denied discretionary review on April 13, 2005. See DE#6, Appx. 100-154. Helton now seeks federal habeas relief, and this matter is fully briefed and ripe for review.

## II. Issues Presented

In his own words, Helton lists the following three issues in his petition: 1) "Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant", 2) "Denial of effective assistance of counsel" because counsel "failed to adequately prepare Defendant's case", "failed to raise appropriate objections", and failed "to enter pre-empatory (sic) challenges during jury selection", and 3) "Conviction obtained by action of a jury which was unconstitutionally selected and impaneled then tainted by further proceedings". DE#1, p. 2-3.[1]

## III. Conclusions of Law

### Statutory Jurisdiction

Pursuant to 28 U.S.C. §2254(a), "... a district court shall entertain an

---

[1] Petitioner's supporting memorandum is disjointed and concludes that these issue reflect judicial or prosecutorial misconduct. However, such fleeting references are nothing more than unsupported conclusory allegations that were never presented to state courts.

application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. The statute requires that a petitioner be 'in custody' when he files his habeas petition. *Carafas v. Lavelle*, 391 U.S. 234, 237, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 982, L.Ed.2d (1998). At the time Helton filed this habeas petition, he was in state custody under the challenged state convictions at the Eastern Kentucky Correctional Complex in West Liberty, Kentucky.

**Applicability of AEDPA, Successiveness**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was effective on April 24, 1996. It is well-settled that the AEDPA fully applies to habeas petitions (such as the present one) filed after such date. *Woodford v. Garceau*, 538 U.S. 202, 123 S.Ct. 1398, 1402, 155 L.Ed.2d 363 (2003)("an application filed after the AEDPA's effective date should be reviewed under the AEDPA"); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1518, 146 L.Ed.2d 389 (2000). The AEDPA requires a reviewing court to initially determine whether a federal habeas petition is "successive". 28 U.S.C. §2244(a); *In re Sims*, 111 F.3d 45 (6th Cir. 1997)(per curiam). Helton indicates he has not filed any other federal petitions, and the record does not reflect any.

**AEDPA One-Year Period of Limitations**

Amended 28 U.S.C. §2244(d)(1) provides that "a 1-year period of limitations shall apply to an application for a writ of habeas corpus... [t]he limitation period shall run from the latest of the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review..." or several other dates not applicable here. The AEDPA period of limitations is tolled during the time that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. §2244(d)(2).

The Kentucky Supreme Court affirmed Helton's conviction on December 20, 2001. Helton had ninety days to seek certiorari, but did not do so. *Bronough v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000)(holding that the one-year period of

limitations begins to run when the 90-day time for filing for certiorari expires).[2] Helton filed his RCr 11.42 motion approximately five months later on August 13, 2002. Helton pursued state post-conviction review through the denial of discretionary review by the Kentucky Supreme Court on April 13, 2005. Again, Helton had 90 days to seek certiorari, but did not do so. *Abela v. Martin*, 348 F.3d 164, 171 (6th Cir. 2003), *cert. denied*, 541 U.S. 1070 (2004)(holding that tolling applies during the time in which a defendant could seek certiorari after state court denial of post-conviction relief).[3]

The time period from August 13, 2002 (date of filing of 11.42 motion) until 90 days past April 13, 2005 (expiration of period for seeking certiorari from the denial of discretionary review) was statutorily tolled. If Helton is given the benefit of the "mailbox rule" for pro se prisoners, he "filed" his federal habeas petition on August 20, 2005, the date he signed it and gave it to prison authorities for mailing. See *Houston v. Lack*, 487 U.S. 266, 273, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). As Helton has used less than one year of untolled time, his federal petition was timely filed.

## Exhaustion of State Remedies

Before seeking habeas relief in federal court, a state prisoner must first exhaust "the remedies available in the courts of the State." 28 U.S.C. §2254(b); *Banks v. Dretke*, 540 U.S. 668, 690, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004). "The exhaustion requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990); and see, *O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999)(observing that state prisoners must give state courts "a *fair* opportunity to act on their claims"); *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th

---

[2]Pursuant to Rule 13 of the United States Supreme Court Rules, the 90 day period to file for certiorari runs from the date the state appellate opinion was rendered, not the date of mandate.

[3]Prior to *Abela*, the AEDPA one-year period of limitations was not considered tolled during the time in which a defendant could have filed a petition for certiorari following a state court's denial of post-conviction relief. See *Isham v. Randles*, 226 F.3d 691, 695 (6th Cir. 2000); *Searcy v. Carter*, 246 F.3d 515, 518 (6th Cir. 2001). However, the decision in *Abela* effectively overruled *Isham* and its progeny in the Sixth Circuit.

Cir. 2004), *cert. denied*, 543 U.S. 1177 (2005). Helton appealed his criminal conviction to the Kentucky Supreme Court and later pursued collateral relief pursuant to RCr 11.42 through the highest level of the state courts. The respondent appropriately acknowledges that any constitutional issues fairly presented and fully pursued in such proceedings are exhausted for purposes of habeas review.

**Procedural Default**

To the extent that Helton is now attempting to assert any additional issues, grounds, or theories that he did not fairly present and fully exhaust in state court, the respondent correctly points out that they are defaulted and not reviewable here. See DE#11, p. 8, 12-13, 17-18, 22. Federal district courts generally lack jurisdiction to consider habeas claims that were not fairly presented to the state courts. *Wainwright v. Sykes*, 433 U.S. 72, 84-87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2003); *Newton v. Millon*, 393 F.3d 873, 877 (6th Cir. 2003). "Because only claims adjudicated on the merits in state court proceedings are cognizable on habeas review, this Court generally may not review claims that were not substantively decided by state court." *Lancaster v. Adams*, 324 F.3d 423, 436 (6th Cir.), *cert. denied*, 540 U.S. 1004 (2003); *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000).

A petitioner who presents an issue on habeas that could have been raised in state court is procedurally barred from raising such issue in a federal habeas proceeding, absent a showing of "cause and prejudice." *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The petitioner must show "cause" to excuse his failure to present the claims in state court and prejudice to his defense. *Wainwright*, 433 U.S. at 77-91, 97 S.Ct. 2497; *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The prisoner bears the burden of demonstrating cause and prejudice. *Id.*, 501 U.S. at 750; *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2001). Helton has not shown any 'cause and prejudice' to excuse the default of any issues he did not fairly present and fully exhaust in state court.[4] The default of specific issues will be discussed separately

---

[4] Default may also be excused in the rare case where the petitioner shows that a fundamental miscarriage of justice would otherwise result. *Schlup v. Delo*, 513 U.S. 298, 326-30, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Such showing must be based on "new reliable evidence". *Id.*, 513 U.S. at 324; *Craddock v. Mohr*, 215 F.3d 1325, 2000 WL 658023 (6th Cir. (Ohio))("A fundamental miscarriage of justice occurs when the petitioner submits new evidence showing that a constitutional violation has probably resulted in the conviction of one who is actually

hereinafter.

## Standard for Federal Habeas Review

Federal habeas review is governed by the standard set forth in the AEDPA:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

The United States Supreme Court has explained that a state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). In *Williams*, the Supreme Court explained that an "unreasonable application" occurs when "the state court identifies the correct legal principle from this Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The United States Supreme Court observed in *Bell v. Cone*, 535 U.S. 685, 122 S.Ct. 1843, 1850-51, 152 L.Ed.2d 914 (2002) that the focus of inquiry under the "unreasonable application" prong is whether the state court's application of clearly established federal law was "objectively unreasonable". See also, *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004)("the Supreme Court has found it necessary within the past year to reiterate that when a state court's application of governing federal law is challenged in a habeas petition, the decision must not only be shown to be erroneous, but objectively *unreasonable*")(emphasis in original), citing *Middleton v. McNeil*, 541 U.S. 433, 124 S.Ct. 1830, 158 L.Ed.2d

---

innocent."). Helton has not made such showing.

701 (2004) and *Yarborough v. Gentry*, 540 U.S. 1, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003).

In situations where a petitioner has fairly presented a constitutional claim to the state courts but the state courts do not address it, the Sixth Circuit Court of Appeals has held that "the deference due under AEDPA does not apply.... Instead, this court reviews questions of law and mixed questions of law and fact de novo." *Maples v. Stegall,* 340 F.3d 433, 436 (6th Cir. 2003), citing *Williams v. Coyle,* 260 F.3d 684, 706 (6th Cir. 2001), *cert. denied*, 56 U.S. 947 (2004); see also, *Danner v. Motley,* – F.3d –, 2006 WL 1275521, *3 (6th Cir. (Ky.))(applying *de novo* review because the state courts had not addressed a constitutional argument raised by petitioner); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)(same).

**Presumption of Correctness**

The AEDPA further provides in 28 U.S.C. §2254(e)(1) that:

> "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

Under 28 U.S.C. §2254(e)(1), "[p]rimary or historical facts found by state courts are 'presumed correct and are rebuttable only by clear and convincing evidence'." *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir.), *cert. denied*, 540 U.S. 1004 (2003).

**Issue 1: Whether the Kentucky Supreme Court's Decision that there was No *Brady* Violation Regarding Stout's Letters was "Contrary to or an Unreasonable Application of Clearly Established Supreme Court Precedent" or "Resulted in a Decision That was Based on an Unreasonable Determination of the Facts in Light of the Evidence Presented in the State Court Proceeding"**

On habeas, Helton alleges that his "[c]onviction [was] obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence

favorable to the defendant". DE#1, p. 2.[5] Helton is referring to several letters written in 1999 by Robert Stout, the jailhouse informant who testified for the prosecution. The letters indicated that Stout had offered to testify for the Commonwealth in another case. The Commonwealth indicated to the court on the record that Stout did *not* testify in that other case and that Stout had not received any deal in exchange for his testimony in Helton's case. This issue was fairly presented on direct appeal, is not defaulted, and is reviewable on habeas.

On direct appeal, Helton's argument included the allegation that the trial court should have precluded Robert Stout from testifying, or alternatively, should have granted a continuance (requested on the day of trial) to allow the defense additional time to investigate these letters. DE#6, Appx. 8, 34-48. Helton also argued that "the Commonwealth had a duty to disclose the letters from Stout to the defense long before it did", citing state rule RCr 7.24 and state case law. DE#6, Appx. 40. Helton cited *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-1197 (1963) for the proposition that the prosecutor is required "to disclose evidence that, if suppressed, would deprive the defendant of a fair trial" (DE#6, Appx. 420) and *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) for the proposition that impeachment evidence is subject to such disclosure requirement.[6]

The Kentucky Supreme Court affirmed the trial court's holding that the prosecution had in fact provided the letters to the defense on December 22, 1999, three weeks prior to trial. The Kentucky Supreme Court held that three weeks was sufficient time for the defense to have investigated the information in the letters and that no constitutional violation under *Brady* or *Bagley* resulted. DE#6, Appx. 94-95. Helton has not pointed to any evidence that might rebut the presumption of correctness for the state court's factual finding that the letters were in fact disclosed three weeks prior to Helton's trial. To the extent Helton asserts the

---

[5]Oddly, the short paragraph that follows such listed issue in the supporting memorandum has nothing to do with the alleged failure by the prosecution to disclose Stout's letters. However, in his response to the motion to dismiss, Helton does finally discuss this issue. DE#14, p. 3-5.

[6]Helton cited several more Supreme Court cases for broad principles, such as *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) for the general proposition that the "partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony" and *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995), which discussed the *Bagley* decision. See DE#6, Appx. 43-44 for Supreme Court references in state appellate brief.

letters were not disclosed, his argument is based on an incorrect factual premise that is refuted by the record.

It is not necessary for this federal court to inquire whether the state court's ruling was correct under RCr 7.24. To the extent the state court's decision was a matter of state law, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.... [on] habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); and see, *Danner,* 2006 WL 1275521 at *3.

With respect to Helton's constitutional argument, the Kentucky Supreme Court correctly identified *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-1197 (1963) and *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) as controlling precedent. DE#6, Appx. 95. In *Brady,* the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley,* 473 U.S. at 682, 105 S.Ct. at 87; and see, *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)(the prosecution must disclose exculpatory evidence that "creates a reasonable doubt that did not otherwise exist.").

"The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles,* 514 U.S. at 434. The "disclosure obligation includes evidence that could be used to impeach the credibility of a witness." *Schledwitz v. United States,* 169 F.3d 1003, 1011 (6th Cir. 1999); *Carter v. Bell,* 218 F.3d 581, 601 (6th Cir. 2000). To show a *Brady* violation, Helton had to show that (1) the evidence at issue was favorable to him, (2) the prosecution, either willfully or inadvertently, suppressed that evidence, and (3) prejudice resulted. *Strickler v. Greene,* 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *Harbison v. Bell,* 408 F.3d 823, 830 (6th Cir. 2005), *cert. denied,* 2006 WL 481159.

The Kentucky Supreme Court found that Helton did not show that the prosecutor actually suppressed the impeachment evidence, but rather, disclosed it three weeks prior to trial. At best, the Kentucky Supreme Court found Helton had merely shown some minor delay that did not prejudice his defense and did not

Page 10 of 20

result in any constitutional violation under *Brady* or its progeny. Although Helton claimed on direct appeal that the delay deprived him of a fair trial, Helton's case is unlike *Brady,* where the prosecution failed to disclose a co-defendant's murder confession until after Brady was convicted. Helton has not shown that the state court holding in his own case conflicted with any decision of the United States Supreme Court on a question of law or that the state court decided the issue differently than the United States Supreme Court on a set of materially indistinguishable facts. *Williams*, 120 S.Ct. at 1523; *Sanders*, 221 F.3d at 851.

The Kentucky Supreme Court expressly held that three weeks was adequate to investigate the information in the letters and that defense counsel had performed adequately in his efforts to impeach Stout. Nothing in such state decision runs afoul of *Brady* or *Bagley*. Helton has not shown that the Kentucky Supreme Court's decision was contrary to or an unreasonable application of *Brady, Bagley,* or any other clearly established Supreme Court precedent. Helton is not entitled to any habeas relief on such basis.

**Issue 2: Whether Several of Helton's Grounds for Alleged "Ineffectiveness" are Defaulted, and Whether the State Court's Decision on the Remaining Ground was "Unreasonable Application of Clearly Established Supreme Court Precedent"**

Petitioner claims that he received ineffective assistance of counsel on three grounds, namely that 1) counsel "failed to adequately prepare Defendant's case", 2) "failed to raise appropriate objections", and 3) failed "to enter pre-empatory (sic) challenges during jury selection". However, Helton did not raise grounds #2 and #3 in his state 11.42 motion (see DE#6, Appx. 100-110), and such ineffectiveness grounds are defaulted. Helton has made no showing of cause and prejudice to excuse default, and such grounds are not reviewable here. Petitioner could have raised such grounds on 11.42 review, but did not.

On habeas, a petitioner may not base his claims on different grounds than previously raised in the state courts. *Kilby v. Jones*, 809 F.2d 324, 325 (6th Cir. 1987); *Pillette v. Foltz*, 824 F.2d 494, 497-98 (6th Cir. 1987)(the same issue under the same theory must be presented to the state courts before raising it on federal habeas); *Lyons v. Stovall*, 188 F.3d 327 (6th Cir. 1999). The respondent correctly asserts (at DE#11, p. 11-12) that Helton pursued his "ineffectiveness" claim in state court on ground #1 (that counsel failed to investigate sufficiently regarding the jailhouse informant, Robert Stout). As Helton has completed his 11.42

Page 11 of 20

proceedings in state court, any other alleged grounds for ineffectiveness can no longer be raised in state court and are defaulted. "Kentucky law does not allow successive post-conviction motions". *Reynolds v. Berry*, 146 F.3d 345, 347 (6th Cir. 1998). Very simply, a state prisoner must present all his claims in a single 11.42 proceeding or thereafter be barred from doing so. *Stamps v. Rees*, 834 F.2d 1269, 1274 (6th Cir. 1987), *cert. denied*, 108 S.Ct. 1279 (1988).

Helton alleges in ground #1 on habeas that his trial counsel "failed to adequately prepare Defendant's case". Although such ineffectiveness ground is generalized and vaguely worded in his petition, he explains in his memorandum that his "counsel failed to expose the motivation of this state's witness [Stout]" and that "counsel failed to properly investigate the background and motivations of the state's jailhouse informant". DE#1, Mem. p. 6-7. To the extent Helton is referring to his trial counsel's preparation for and impeachment of the testimony of the informant Robert Stout, such ineffectiveness claim was raised and rejected in the state courts on 11.42 review, and is reviewable on habeas.

In his 11.42 motion, Helton had alleged in scattershot fashion that his trial counsel was ineffective for "failing to interview or utilize" certain witnesses to impeach the jailhouse informant, Robert Stout, see DE#6, Appx. 101-110, that counsel should have called jail staff, various inmates, and Stout's wife to testify regarding Stout, that counsel should have called the prosecutor to testify that he had rented an apartment to Stout's wife, and that Stout was a "deal seeker". Helton also claimed that counsel should have interviewed other prisoners and called them to testify that Helton had not discussed the crime, and that counsel should have interviewed the jail guard and called him to testify that Helton asked to have Stout removed from the cell because of his questioning of Helton.

The trial court denied the motion, holding that "the record totally refutes the Movant's claim that his counsel was ineffective in dealing with the issues concerning the testimony of Robert Stout." DE#6, Appx. 113. On appeal, the Kentucky Court of Appeals correctly identified *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) as the Supreme Court precedent governing Helton's ineffectiveness claim (see DE#6, Appx. 149-151) and held:

> "This is an appeal from an order denying appellant's RCr 11.42 motion alleging ineffective assistance of counsel in failing to investigate and interview certain witnesses regarding the testimony of one of the Commonwealth's witnesses, a jailhouse snitch. From our review of the record, appellant's trial counsel adequately investigated the potential impeachment of the witness and did, in fact, attempt to so impeach the

witness at trial. Hence, there was no ineffective assistance of counsel."
*Helton v. Commonwealth*, 2004 WL 2633606, *1 (Ky.App. 2004).

The Kentucky Court of Appeals further explained that:

> "In his direct appeal, Helton argued that Stout should not have been allowed to testify at trial and, in the alternative, that Helton was improperly denied the opportunity to impeach Stout's testimony at trial. In rejecting these arguments, the Court recognized the fact that Helton's trial counsel sought information through discovery relative to Stout's background (aliases, social security numbers, dates of birth, criminal history, bad acts, probation and parole status, and any deals offered by prosecution in exchange for his testimony); tried to preclude Stout's testimony at trial; in the alternative, sought a continuance to investigate certain letters written by Stout prior to Helton's trial regarding his offer to testify on behalf of the Commonwealth in another case; "thoroughly questioned Stout regarding the letters in an attempt to impeach him with regard to his motivation to testify in Appellant's brief"; and, despite Stout's assertion of his 5th Amendment right not to testify, "was still able to question Stout regarding his motivation to testify against him."
> .......
> In viewing the record of Helton's second trial, we also see that his counsel filed numerous pre-trial motions in the case-for discovery, exculpatory evidence, to exclude KRE 404 evidence-and subpoenaed many witnesses to testify on behalf of Helton. The pretrial motion for disclosure of impeachment evidence regarding the testimony of Stout was exhaustive and sought all manner of information relative to Stout. As to defense counsel's trial performance, the trial court found: The record also reveals that Movant's trial counsel very effectively cross examined Stout, getting him to admit that he had lied on several occasions. On cross-examination, Stout admitted that he had acted as an informant in Alabama; that he had written the Commonwealth Attorney several letters asking for help; and, that his wife rented an apartment from the Commonwealth Attorney.
> ....
> A trial court's findings of fact on an RCr 11.42 motion will not be overturned unless they are clearly erroneous. *Bowling v. Commonwealth*, Ky., 80 S.W.3d 405 (2002), *cert. denied,* 538 U.S. 931, 123 S.Ct. 1587, 155 L.Ed.2d 327 (2003). Here, the trial court's findings on the motion were

clearly supported by the record. Further, the Supreme Court's determinations are binding upon us under the law of the case doctrine. *Hogan v. Long,* Ky., 922 S.W.2d 368 (1995). Accordingly, we agree that Helton's counsel's performance at trial was not deficient relative to the impeachment of Stout. For the foregoing reasons, the order of the Knox Circuit Court is affirmed." *Helton,* 2004 WL 2633606, *2.

In conformity with standard established in *Strickland,* the Kentucky Court of Appeals held that petitioner had failed to show that his counsel's performance was objectively deficient, or that any prejudice had resulted. The Kentucky Supreme Court denied discretionary review.

On federal habeas review, "[a] claim of ineffective assistance of counsel presents a mixed question of fact and law; we therefore apply the 'unreasonable application' prong of §2254(d)(1)." *Barnes v. Elo,* 339 F.3d 496 (6th Cir. 2003), 2003 WL 21844494, *4; *Hunt v. Mitchell,* 261 F.3d 575, 580 (6th Cir. 2001). A state court unreasonably applies Supreme Court precedent "if the state court identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular prisoner's case." *Williams,* 529 U.S. at 407, 120 S.Ct. at 1521. A federal court may not grant a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S.Ct. at 1522.

In Helton's case, the Kentucky Court of Appeals set forth in considerable detail trial counsel's considerable efforts to impeach the informant Stout and found no objective deficiency in counsel's performance. In *Coe v. Bell,* 161 F.3d 320, 342 (6th Cir. 1998), *cert. denied,* 528 U.S. 842 (1999), the Sixth Circuit Court of Appeals explained that:

> "The specifics of what [defendant] claims an effective lawyer would have done for him are too voluminous to detail here. They also largely miss the point: just as (or more) important as what the lawyer missed is what he did not miss. That is, we focus on the adequacy or inadequacy of counsel's actual performance, not counsel's (hindsight) potential for improvement. See *Sims v. Livesay,* 970 F.2d 1575, 1580 (6th Cir.1992). Furthermore, our review is highly deferential."

"There is a strong presumption that an attorney's performance falls within the wide range of reasonable professional assistance." *Strickland,* 104 S.Ct. at 2065;

*Scott v. Mitchell*, 209 F.3d 854 (2000)(observing that a criminal defendant is entitled to competent counsel and a fair trial, not perfection). Helton has not shown that the Kentucky courts unreasonably applied *Strickland* to his own case.

**Issue 3: Whether Petitioner's Habeas Claim That "The Jury was Unconstitutionally Selected and Impaneled Then Tainted by Further Proceedings" is Defaulted**

Finally, petitioner claims on habeas that his "conviction [was] obtained by action of a jury which was unconstitutionally selected and impaneled then tainted by further proceedings". DE#1, p. 3. He has presented no developed argument regarding such issue in his supporting memorandum, although he does belatedly discuss voir dire in his response to the motion to dismiss. See DE#14, p. 8-12, 14. Regardless, on direct appeal, Helton did not raise any constitutional issues regarding voir dire or jury selection.[7] Hence, Helton's claim is defaulted and not reviewable here. He has not shown any cause or any resulting prejudice, nor any actual innocence, to excuse default.[8]

Moreover, Helton concedes that "all the jurors stated that they could be fair and impartial and would base the case upon the testimonies they heard from the witnesses and evidence that was presented during the trial and the law and the instructions given them by the court." DE#14, p. 8. He merely disagrees because "numerous potential jurors had read about the case in the newspapers and or heard rumors..." DE#14, p. 8. Helton fails to understand that "[q]ualified jurors need not ...be totally ignorant of the facts and issues involved." *Murphy v. Florida*, 421

---

[7]In addition, "allegations of bias in the jury... must be preserved at trial, or they will be lost." *Wolfe v. Brigano*, 232 F.3d 499 (6th Cir. 2000); *Ross v. Oklahoma*, 487 U.S. 81, 85, 108 S.Ct. 2273, 56 USLW 4676, 101 L.Ed.2d 80 (1988).

[8]Although Helton seeks to blame his counsel for not raising such jury issues on direct appeal, "[a]ppellate counsel is not ineffective simply he or she decides not to raise every possible argument on appeal." *Wright v. United States*, 182 F.3d 458 (6th Cir. 1999). The United States Supreme Court has recognized that the "process of winnowing out weaker arguments on appeal and focusing on those most likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), quoting *Jones v. Barnes*, 463 U.S. at 751-52. Helton has not shown that his appellate counsel ignored any issues that were clearly stronger than those presented, and thus he has not overcome the presumption of effective assistance of counsel. *Monzo*, 281 F.3d at 579; *Bagley*, 380 F.3d at 970-971. Thus, he has shown no cause to excuse default.

U.S. 794, 799-800, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). It is sufficient if the juror can set aside his initial impression and render a verdict based on the evidence presented at trial. *Irvin v. Dowd,* 366 U.S. 717, 722-23, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Moreover, it is well-settled that trial courts enjoy broad discretion in conducting their voir dire proceedings. *Mu' Min v. Virginia,* 500 U.S. 415, 424-427 (1991); *Morgan v. Illinois,* 504 U.S. 719, 729, 112 S.Ct. 2222, 2230 (1992) ("The Constitution, after all, does not dictate a catechism for *voir dire,* but only that the defendant be afforded an impartial jury.").

A trial court's finding of juror impartiality is a factual determination entitled to 28 U.S.C. §2254(e)'s presumption of correctness on habeas review. See *Dennis v. Mitchell,* 354 F.3d 511, 520 (6th Cir. 2003); *Hill v. Brigano,* 199 F.3d 833, 843 (6th Cir. 1999), quoting *Patton v. Yount,* 467 U.S. 1025, 1031 (1984). Even if Helton's defaulted allegation was reviewable here, he has not rebutted the AEDPA presumption of correctness because he has not provided any plausible reason for the trial court to have disbelieved any of the jurors' sworn statements that they would be impartial and decide the case on the evidence. *Patton,* 467 U.S. at 1036.

To the extent Helton also vaguely alleges the jury was "tainted by further proceedings", see DE#1, p. 3, Helton has not specified what "further proceedings" he is even referring to, nor presented any developed argument on habeas regarding alleged "jury misconduct".[9] If he is attempting to reassert his claim from direct appeal that "a mistrial was required where the jury failed to follow the court's repeated admonition and discussed the case prior to the close of the evidence and the case and submission of the case" (DE#6, Appx. 9, 48-53)[10], the Kentucky Supreme Court considered and rejected such claim as follows:

---

[9] In a single sentence in his supporting memorandum, Helton alleges that "Petitioner's jury was tainted by the prosecution and further became unconstitutional as Defense Counsel neglected to enter any pre-emptory (sic) challenges after the prosecution had effectively tainted the jury's opinions." DE#1, Mem. p. 1. Such allegation is conclusory and not supported by specific facts.

[10] Helton argued on direct appeal that the trial court should have declared a mistrial and that "the violation by the jury of the court's [previous] admonition pursuant to RCr 97.0 resulted in a violation of Helton's constitutional rights. U.S. Const., 6th and 14th Amends." DE#6, Appx. 53. The 6th Amendment, applicable to the states via the 14th Amendment, guarantees criminal defendants the right to a fair trial by an impartial jury. *Morgan,* 504 U.S. at 726-27, 729; *Irvin,* 366 U.S. at 722. Helton cited Supreme Court precedent for the proposition that he was entitled to a fair trial by a panel of impartial jurors.

> "Appellant next argues that he is entitled to a new trial for jury misconduct because the jurors discussed the case before it was submitted to them. We disagree. The only evidence of the empaneled jury discussing or considering the case occurred when the trial court learned that Juror #53 has researched the 5th Amendment following Smith Roark's attempted assertion of the privilege. Juror #53 stated that he did not share his research with the rest of the jury. However, he did comment that other jurors were questioning why Roark exercised his 5th Amendment privilege. The trial court excused juror #53 from the panel and admonished the jury not to discuss the case until it was presented to them for deliberation. See DE#6, Appx. 96-97.
>
> .....
>
> Appellant contends that the trial court had an obligation to <u>sua sponte</u> declare a mistrial although there was no motion for a mistrial. We disagree. The trial court properly excused Juror #53 from the panel and inquired of him the extent to which the jury discussed the issue. There is no evidence that the empaneled jury discussed anything further before its deliberations. Thus, a mistrial was not warranted." See DE#6, Appx. 96-97.

On habeas, Helton has not presented any coherent argument regarding this appellate claim, nor pointed to any other specific incidents that allegedly "tainted" the jury. A reviewing court is not required to construct a petitioner's arguments for him or to guess at the meaning of vague allegations unsupported by any specific facts. Moreover, the United States Supreme Court has observed that courts may "generally presume that jurors follow their instructions". *Penry v. Johnson*, 532 U.S. 782, 799, 121 S.Ct. 1910, 1922, 150 L.Ed.2d 9 (2001); *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). This includes curative admonitions. *Zafiro v. United States*, 506 U.S. 534, 540 (1993); *United States v. Abdullah*, 162 F.3d 897 (6th Cir. 1998)("a reviewing court must presume that jurors complied with cautionary instructions"), citing *United States v. Sivils*, 960 F.2d 587, 594 (6th Cir. 1992), *cert. denied*, 506 U.S. 843 (1992).

The Kentucky Supreme Court pointed out on direct appeal that the trial court had admonished the jury not to discuss the case until it was presented to them for deliberation and that "defense counsel declined the trial court's offer of [a further] admonition to the jury not to infer anything from Roark's refusal to testify." DE#6, Appx. 91. The Kentucky Supreme Court explained that:

"Roark's ill-fated assertion of his privilege no more implied that Appellant was guilty than it implied that Appellant was not guilty, because the jury could have just as likely inferred that Roark may have been the guilty party....we find no reason to conclude that the trial court's proposed admonition would not have sufficiently remedied any problem that might have existed from Roark's actions. Appellant declined to have the jury admonished. He is not entitled to a more drastic remedy on appeal." DE#6, Appx. 91.

Although Helton makes the generalized allegation on habeas that he was deprived of a "fair trial", "[g]eneral allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present claims' that specific constitutional rights were violated." *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004). Helton has not adequately presented argument regarding this issue on habeas and has shown no basis for habeas relief.

**No Hearing Required**

Only if the court finds a factual dispute and that the petitioner may be entitled to relief should it grant an evidentiary hearing. *Witham v. United States*, 355 F.3d 501, 506 (6th Cir. 2004); *Vroman v. Brigano*, 346 F.3d 598, 606 (6th Cir. 2003). No hearing is required if the petitioner's allegations are contradicted by the record, inherently incredible, or are merely conclusions rather than statements of fact. *Arredondo v. United States*, 178 F.3d 778 (6th Cir. 1999); *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). Helton has not shown any basis for an evidentiary hearing in this case.

**V. Certificate of Appealability ("COA")**

The AEDPA provides that a COA should issue "only if the applicant has made a substantial showing of the denial of a constitutional right", 28 U.S.C. §2253(c)(2), and shall indicate which specific issues satisfy the "substantial showing" requirement, 28 U.S.C. §2253(c)(3); *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2002)(requiring an "individualized determination of each claim"); *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed2d 542 (2000). The Supreme Court has explained that to obtain a COA, "a prisoner must demonstrate that

jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Banks v. Dretke*, 540 U.S. 668, 124 S.Ct. 1256, 1280, 157 L.Ed.2d 1166 (2004), citing *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

With respect to procedural recommendation that certain issues or grounds are defaulted, Helton did not raise any issues regarding voir dire on direct appeal. The record also plainly shows that Helton did not raise two of his ineffectiveness grounds on state 11.42 review, specifically the vague and generalized claim that counsel "failed to raise appropriate objections" and failed "to enter pre-empatory (sic) challenges during jury selection". These claims were not raised on direct appeal or 11.42 review and are defaulted. Jurists of reason would not debate this.

It is further recommended that jurists of reason would not find that any of Helton's claims set forth a debatably valid constitutional claim. With respect to Issue #1, Helton's *Brady* argument is premised on his inconsistent allegations that the Stout letters were not disclosed or were disclosed too late to be investigated adequately. However, the state courts found that such letters were disclosed three weeks before trial, that defendant had sufficient time to investigate the information in the letters, and that defense counsel did in fact perform effectively in his efforts to impeach the prosecution witness, Robert Stout. Helton has not rebutted the presumption of correctness afforded by the AEDPA to state findings of fact, i.e. that the letters were disclosed three weeks prior to trial.

With respect to issue #2, the state courts correctly identified the *Strickland* standard as the governing law and accurately pointed out the lack of merit in Helton's allegations of "ineffectiveness" related to the *Brady* issue. The state courts found no objectively deficient performance by counsel, nor any resulting prejudice, and such conclusions are well supported by the record. The state courts set forth in detail the extensive efforts by defense counsel to impeach the informant. Helton has provided no affidavits of any additional "impeachment" witnesses that purportedly might have been called, and has not made any showing that the anticipated testimony of any such suggested witnesses would actually have been material for purposes of impeaching Stout. Helton's other grounds for alleged ineffectiveness are defaulted, vague, and inadequately presented. Jurists of reason would not find that any such claims set forth a debatably valid constitutional claim of ineffective assistance of trial counsel.

Helton's habeas claim #3 that his "conviction [was] obtained by action of a jury which was unconstitutionally selected and impaneled then tainted by further proceedings", DE#1, p. 3, was never presented to the state courts. Moreover, on

habeas, Helton concedes that the jurors all indicated to the trial court that they could set aside any initial impressions and render a verdict based on the evidence presented at trial. Although Helton complains that some jurors may have read newspaper accounts or "heard rumors", this is a common occurrence in many trials and does not by itself indicate any sort of constitutional violation. Helton has not substantiated his allegations, nor has he rebutted the presumption of correctness afforded to trial court's factual determinations of juror impartiality during voir dire.

In conclusion, the petitioner's habeas claims are not "adequate to deserve encouragement to proceed further." *Banks*, 124 S.Ct. at 1280. Petitioner is not entitled to a certificate of appealability.

## RECOMMENDATION

It is **RECOMMENDED** that:

a) the "Petition for Writ of Habeas Corpus" (DE#1) by Walter C. Helton should be **DENIED with prejudice**; and
b) the "Motion to Dismiss and/or for Summary Judgment" (DE#7) by the respondent should be **GRANTED**; and
c) a certificate of appealability should not be issued.

Particularized objections to this Report and Recommendation must be filed within ten (10) days of the date of service of the same or further appeal is waived. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *affirmed*, 474 U.S. 140 (1985). Poorly drafted objections, general objections or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. See *Howard v. Secretary of Health and Human Services*, 932 F.2d 505 (6th Cir. 1991). A party may file a response to another party's objection within ten (10) days after being served with a copy thereof. Rule 72(b), Fed. R.Civ.P.

This the 31st day of May, 2006.



Signed By:
J. B. Johnson, Jr.
United States Magistrate Judge